Albert ROEDERS, Albert Rohl, Clark Ness and Ronald Gessele, Plaintiffs and Appellants,

v.

CITY OF WASHBURN, North Dakota, acting through its City Commission, and Hawkins Chemical Co., a Foreign Corporation, Defendants and Appellees.

Civ. No. 9797.

Supreme Court of North Dakota.

Oct. 6, 1980.

Rehearing Denied Nov. 21, 1980.

Vogel Law Firm, Mandan, for plaintiffs and appellants; argued by Rauleigh D. Robinson, Mandan.

William F. Lindell, Washburn, for defendant and appellee City of Washburn.

Kelsch & Kelsch, Bismarck, and Henson & Efron, Minneapolis, Minn., for defendant and appellee Hawkins Chemical Co.; argued by Robert P. Bennett, Bismarck.

SAND, Justice.

This is an appeal from a summary judgment dismissing plaintiff's action against the defendants, Hawkins Chemical Co. and the City of Washburn. We reverse.

During the spring of 1979, Hawkins Chemical Co. [Hawkins] indicated a desire to construct and operate a warehouse and storage facility in Washburn, North Dakota. The original site for the facility was strongly objected to by a sizable number of people from Washburn and an alternative site on land owned by the Otter Tail Power Co. [Otter Tail] was suggested by some of these people and by others. Although the record does not clearly reflect whether or not the city of Washburn suggested the Otter Tail land, the record does reflect that Washburn acquiesced in the suggestion. The Otter Tail land contained 23 acres and was used by Otter Tail for a power plant before the plant was abandoned and demolished. Hawkins agreed to locate its plant on 3.42 acres of the Otter Tail land. An application by Otter Tail was made to rezone the entire 23 acres of the Otter Tail land from agricultural to industrial. This matter was considered, postponed, and again considered. Washburn concedes in its brief and the minutes of the 2 July 1979 special meeting of the Washburn Planning and Zoning Commission reflect that all members of the Commission were aware of the intended use to be made of the property by Hawkins and that the land was rezoned from agricultural to industrial to accommodate this use.

On 14 Sept 1979 Otter Tail executed a warranty deed to Washburn conveying the entire 23 acres to Washburn with the specific provision that Washburn

". . . shall use the property granted herein for park and recreation purposes only. Should . . . [Washburn] use the property, or any part thereof, for purposes other than park and recreation, such property shall revert to . . . [Otter Tail]."

An additional agreement[1] between Otter Tail and Washburn, dated 14 Sept 1979, made reference to the warranty deed's reversionary provision and then stated that Washburn was now planning to sell part of the property to Hawkins for commercial and industrial purposes. This agreement concluded by providing that Washburn would pay Otter Tail for all the property purchased by Hawkins at the rate of $4,000.00 per acre. Otter Tail also agreed to convey its reversionary interest to Hawkins upon receipt of the payment from Washburn. This agreement, in effect, permitted Otter Tail to use the city of Washburn as a strawman to transfer the land to Hawkins. On 17 Sept 1979, the Washburn City Commission passed a motion that the city ". . . accept and approve the conditions specified by the Otter Tail Power Company in the transfer of land from Otter Tail Power Company to the City of Washburn." This agreement was signed by the vice president and secretary of Otter Tail on 14 Sept 1979 and the mayor of Washburn, James Stroup, and the auditor of Washburn, Clayton Carr, on 19 Sept 1979.

---

1. AGREEMENT

THIS AGREEMENT, By and between Otter Tail Power Company, a Minnesota corporation, Fergus Falls, Minnesota, hereinafter called "Otter Tail," and the City of Washburn, a North Dakota municipal corporation, hereinafter called the "City," Witnesseth:

WHEREAS, Otter Tail has conveyed to the City its "Washburn Plant" property which is described in the Warranty Deed attached hereto as Exhibit A; and

WHEREAS, Said property was conveyed subject to a reversionary interest in Otter Tail, should the property be used for purposes other than parks and recreation; and

WHEREAS, The City is now planning to sell part of said property to Hawkins Chemical Company, the property to be used for commercial and industrial purposes, and;

WHEREAS, Otter Tail and the city agree that Hawkins Chemical Company's use of part of the property will be beneficial to all concerned.

NOW THEREFORE, In consideration of the mutual covenants herein expressed, the parties hereto agree as follows:

1. The City agrees to pay Otter Tail for all property purchased by Hawkins Chemical Company at the rate of FOUR THOUSAND DOLLARS ($4,000) per acre.

2. Otter Tail agrees to convey by deed its reversionary interest in said property to Hawkins Chemical Company upon receipt of payment from the City.

On 5 Nov 1979 the Washburn City Commission passed a resolution which provided in part as follows:

"NOW, THEREFORE BE IT RESOLVED

"1. That the City of Washburn herewith again specifically confirms its intention to abandon any plan to use the premises described as attached [the Otter Tail land], for park and recreation purposes, and that said property has not been used for park and recreation purposes by the City of Washburn.

"2. That this Resolution is made to complete the reversion to the Otter Tail Power Company so as to entitle them to convey the premises."

On 13 Nov 1979, Otter Tail executed a warranty deed conveying 3.42 acres of the Otter Tail site to Hawkins. On 31 Jan 1980, Washburn executed a quitclaim deed conveying whatever right, title, and interest the city had in the entire 23 acres to Otter Tail.

The plaintiffs commenced this lawsuit against the city of Washburn and Hawkins on 30 Oct 1979. In their complaint the plaintiffs alleged that the city of Washburn, acting by and through its city commission, violated its zoning ordinance and sold real property at a private sale to Hawkins in violation of § 40–11–04[2] and § 40–11–04.1[3], North Dakota Century Code. All the parties to the action moved for summary judgment pursuant to Rule 56 of the North Dakota Rules of Civil Procedure. The district court, in a memorandum decision dated 25 Mar 1980, found that the

2. Section 40–11–04, NDCC, provides as follows:

"Every municipality shall enact an ordinance providing a uniform method and procedure for the conveyance, sale, lease, or disposal of personal and real property of the municipality. When the property to be disposed of is estimated by the governing body of the municipality to be of a value of less than two thousand five hundred dollars, such property may be sold at private sale upon the proper resolution of the governing body. In all other cases, such property may be sold only at public sale.

3. Section 40–11–04.1, NDCC, provides as follows:

provisions of the warranty deed between Otter Tail and Washburn were not carried out, and the reversionary clause reverted the property to Otter Tail. Consequently, no public trust was violated and a sale by bid was not required. The judgment dismissing plaintiffs' action was entered on 1 Apr 1980, and plaintiffs appealed from that judgment to this Court.

■ At the outset, we note that plaintiffs and both Hawkins and Washburn moved for summary judgment in their favor. We also note that the district court made several findings of fact instead of a mere recitation of facts as a prelude to its order for judgment. This Court has stated that "whenever the court must make a finding of fact, summary judgment is inappropriate." *Albers v. Nodak Racing Club, Inc.*, 256 N.W.2d 355, 358 (N.D.1977). On this basis we could remand to the district court to cure this procedural defect but because all the parties conceded that they had no more factual evidence to present, we believe that the interests of justice and judicial economy require us to, and we will, consider the proceedings before the trial court as a bench trial. See, *Dahl v. City of Grafton*, 286 N.W.2d 774 (N.D.1980).

All the evidence presented to the trial court consisted of written, rather than oral, testimony. Therefore, the role of Rule 52(a), North Dakota Rules of Civil Procedure, is considerably reduced. *E. E. Bach Millwork Co. v. Meisner & Co.*, 228 N.W.2d 904 (N.D.1975).

"Upon resolution by the governing body of a city authorizing the public sale of real property, a notice containing a description of the property to be sold and designating the place where and the day and hour when the sale will be held shall be published in the city's official newspaper as provided in section 40–01–09 once each week for two consecutive weeks with the last publication being at least ten days in advance of the date set for the sale. The notice shall specify whether the bids are to be received at auction or as sealed bids as determined by the governing body of the city. The property advertised shall be sold to the highest bidder if his bid is deemed sufficient by a majority of the members of the governing body."

The dispositive issue of this appeal is whether or not the acts of the city of Washburn leading up to and including the warranty deed and agreement with Otter Tail dated 14 Sept 1979 and the necessarily related acts of the city involving the zoning ordinances were valid.

 The city of Washburn is a city with the council form of government organized under the laws of the State of North Dakota. As such it is a creature of statute, and its rights, powers, and duties are fixed by the Legislature. *Trinity Hospital Association v. City of Minot*, 76 N.W.2d 916 (N.D.1956). This Court has stated several times that cities are agencies of the state and have only the powers expressly conferred upon them by the legislative branch of government or such as may be necessarily implied from the powers expressly granted. *Dakota Land Co. v. City of Fargo*, 224 N.W.2d 810 (N.D.1974); *Parker Hotel Co. v. City of Grand Forks*, 177 N.W.2d 764 (N.D. 1970); *Megarry Bros. v. City of St. Thomas*, 66 N.W.2d 704 (N.D.1954); *Fradet v. City of Southwest Fargo*, 79 N.D. 799, 59 N.W.2d 871 (1953); See also, N.D.Const. § 130. In defining a city's powers the rule of strict construction applies and any doubt as to the existence or extent of the powers must be resolved against the city. *Parker Hotel Company, supra; Green v. Beste*, 76 N.W.2d 165 (N.D.1956).

 Parties dealing with municipal corporations or their officers are charged with notice of the extent and limitations of the city's authority. *Megarry Bros. v. City of St. Thomas, supra; Roberts v. City of Fargo*, 10 N.D. 230, 86 N.W. 726 (1901).

 A city has the right to acquire real property by gift and to hold the property in its corporate name. Section 40–05–01(55), NDCC. We believe that a city, under proper circumstances, may accept, and many have accepted, property subject to conditions. However, we do not believe this case presents such circumstances, because, in effect, the agreement implementing the reversionary provision was executed by the city simultaneously with the acceptance of the warranty deed. The 14 Sept 1979 agreement in effect permits Otter Tail to use the city of Washburn as a strawman or facade to transfer the land to Hawkins. The city officials declined to explain their motives or rationale pertaining to this transaction and related proceedings. Neither did the parties present us with any statutory provisions authorizing Washburn to act in such a manner nor did our research disclose such provisions. We conclude that the city of Washburn exceeded its statutory authority, therefore all land transactions to which the city is a party relating to the 14 Sept 1979 warranty deed and agreement are void.

To perform equity and justice, we must also consider the other transactions interrelated to the land transactions in which the city was a party. Generally, the law does not aid those who suggest or participate in a transaction which is in violation of law. *State Bank of Towner, Inc. v. Rauh*, 288 N.W.2d 299 (N.D.1980). Unauthorized acts should be treated similarly in the absence of justification. See, *Beck v. Lind*, 235 N.W.2d 239 (N.D.1975).

 The minutes of the 2 July 1979 special meeting of the Washburn Planning and Zoning Commission and the deposition of James Stroup clearly reflect that the change of the zoning ordinance of the Otter Tail land was directly interrelated to and part of the void transaction between Washburn and Otter Tail and we, therefore, conclude that the zoning changes are also void.

Accordingly, we reverse the judgment of the district court.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VANDE WALLE, JJ., concur.