**H. D. SPIER, Jr., and Frieda J. Spier, Plaintiffs and Appellants,**

v.

**POWER CONCRETE, INC., a corporation, Defendant and Appellee.**

**Civ. No. 9890.**

Supreme Court of North Dakota.

April 3, 1981.

---

Rausch & Rausch, Bismarck, for plaintiffs and appellants; argued by Richard P. Rausch, Bismarck.

Richardson, Blaisdell & Isakson, Hazen, for defendant and appellee; argued by Charles R. Isakson, Hazen.

SAND, Justice.

The plaintiffs, H. D. Spier, Jr., and Frieda J. Spier [Spiers] appealed from a summary judgment[1] granted in favor of the defendant, Power Concrete, Inc. [Power Concrete], in the amount of $17,248.39 in an action involving a mechanic's lien.

The Spiers entered into a contract on 17 April 1979 with Dakota Building Systems [Dakota Building] for the construction of a building on land owned by the Spiers in Beulah, North Dakota. Dakota Building entered into a subcontract agreement with M & M Construction [M & M] whereby M & M agreed to do the concrete portion of the building. M & M ordered and obtained the concrete for the building from Power Concrete. The first delivery of concrete was on or about 30 May 1979, and the last delivery was on or about 17 Sept. 1979.

M & M subsequently failed to pay for the concrete and a mechanic's lien on the Spiers' property was filed by Power Concrete on 6 May 1980. No evidence was submitted indicating that Spiers paid anyone for the concrete or the construction of the building. The Spiers commenced this action in the nature of a quiet title action to have a Power Concrete's mechanic's lien declared null and void because of a failure by Power Concrete to comply with certain procedural requirements of North Dakota's mechanic's liens law, Ch. 35–27, North Dakota Century Code, as it existed at the time of the Spiers' contract with Dakota Buildings on 17 April 1979. Specifically, the Spiers alleged that Power Concrete did not notify them in writing of the provisions of Ch. 35–27, NDCC, as required by § 35–27–02, NDCC,[2] as it

---

1. The notice of appeal was from an order by the district court. However, after oral argument the parties stipulated and agreed that judgment be entered nunc pro tunc so as to become part of the record on appeal as if it had been obtained and filed in the usual manner.

2. At the time of Spiers' contract with Dakota Building, § 35–27–02, NDCC, provided as follows:

"Any person who improves real estate by the contribution of labor, skill, or materials under contract with the owner of such real estate shall have a lien upon the improvement, and upon the land on which it is situated or to which it may be removed, for the price or value of such contribution. Provided, however, that the amount of the lien shall only be for the difference between the price paid by the owner and the price or value of the contribution. If the owner has paid the full price or value of the contribution, no lien shall be allowed. No person shall have a lien for improving real estate resulting from extending credit to or making a contract with any agent, trustee, contractor, or subcontractor of such owner unless such person first notifies the owner in writing of the provisions of chapter 35–27 and obtains a copy of the contract by which the owner authorizes his agent, trustee, contractor, or subcontractor to seek credit or make contracts in the owner's name, or by which the owner personally assumes responsibility for payment upon default by the owner's agent, trustee, contractor, or subcontractor. In all latter cases, any person claiming a lien for improving real estate shall first proceed by judicial action against the owner's agent, trustee, contractor, or subcontractor and exhaust his remedies of collection upon obtaining judgment before he shall have a lien upon the improvement, or upon the land on which it is situated or to which it may be removed.

existed prior to 1 July 1979, and that the Spiers did not authorize anyone to seek credit in their name nor did they assume responsibility for payment of the obligation.

Power Concrete's answer, in substance, asserted that each delivery of concrete to M & M constituted a separate and individual contract with M & M and that the notice provisions of the pre-1 July 1979 statute did not apply to the deliveries made after 1 July 1979.

The Spiers made a motion for summary judgment pursuant to Rule 56, North Dakota Rules of Civil Procedure, and submitted affidavits by H. D. Spier, Jr. and Victor J. Carufel in support of the motion.

The affidavit of H. D. Spier, Jr. in substance stated that he was the owner of the property to which the contributions were supplied; that he entered into a building contract with Dakota Building in April 1979; that he did not enter into a contract for materials or labor with Power Concrete; that he did not grant authority to anyone to use his name in extending credit; that Power Concrete did not notify him in writing or otherwise of the provisions of Ch. 35–27, NDCC; that Power Concrete did not obtain a copy of the contract by which he authorized any person or contractor to seek credit or make contracts in his name; and that he disclaimed any liability or responsibility for the debt.

The affidavit of Victor J. Carufel, an officer of Dakota Building, in substance stated that Dakota Building entered into a contract with Spier in April 1979 and that Dakota Building did not enter into an agreement with Power Concrete nor did Dakota Building authorize any person or corporation to seek credit in the Spiers' name.

Power Concrete filed a return to the motion for summary judgment together with affidavits by Delmar Schramm, president of Power Concrete, and Ronald Frei, an employee of Power Concrete, in support of the return. These affidavits, in substance, stated that each delivery of concrete by Power Concrete was a separate and individual contract and that all deliveries after 1 July 1979 were governed by § 35–27–02 NDCC, as amended. No other affidavits were filed by either party.

The district court entered an order granting summary judgment in favor of Power Concrete for the amount of its contribution[3] made to the building project after 1 July 1979 but not for the amount of its contributions made prior to 1 July 1979. The Spiers appealed to this Court.

The issue presented for our review is whether or not Power Concrete is entitled to a mechanic's lien on the Spiers' property. The resolution of this issue depends upon whether the pre-1 July 1979 statute or § 35–27–02, NDCC, as amended effective 1 July 1979, is applicable to the facts of this case. This issue must also be resolved with-

Section 35–27–02, NDCC, was amended in 1979 and the amended law, which became effective on 1 July 1979, reads as follows:

Any person who improves real estate by the contribution of labor, skill, or materials, whether under contract with the owner of such real estate or under contract with any agent, trustee, contractor or subcontractor of the owner, shall have a lien upon the improvement and upon the land on which it is situated or to which it may be removed for the price or value of such contribution. Provided, however, that the amount of the lien shall only be for the difference between the price paid by the owner or agent and the price or value of the contribution. If the owner or agent has paid the full price or value of the contribution, no lien shall be allowed. Provided further that if the owner or an agent of the owner has received a waiver of lien signed by the person who improves the real estate by the contribution of labor, skill, or materials, no lien shall be allowed.

Any person who extends credit or makes a contract with any agent, trustee, contractor, or subcontractor of the owner for the improvement of real estate, shall, upon demand, have the right to request and secure evidence of the legal description of the real estate upon which the improvement shall be located, including the name of the title owner of the real estate.

3. The contributions were alleged in Power Concrete's answer to be valued at $17,333.10. The judgment nunc pro tunc was for the value of those contributions and was in the amount of $17,248.39.

in the framework of our summary judgment law which limits the facts as presented by the pleadings and the affidavits filed in this case.

Rule 56, NDRCivP, pertaining to summary judgment provides in pertinent part as follows:

"(c) Motion and Proceedings Thereon. The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages. *Summary judgment, when appropriate, may be rendered against the moving party.*

"(e) Form of Affidavits—Further Testimony—Defense Required. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." [Emphasis added.]

Summary judgment is a procedural device available for the prompt and expeditious disposition of a controversy without a trial if there is no dispute as to either the material facts or the inferences to be drawn from undisputed facts, or whenever only a question of law is involved. *Herman v. Magnuson*, 277 N.W.2d 445 (N.D.1979); *Zuraff v. Empire Fire and Marine Insurance Co.*, 252 N.W.2d 302 (N.D.1977).

Even when factual disputes exist between the parties, summary judgment is appropriate if the law is such that the resolution of the factual dispute will not change the result. These facts in essence are not material facts. *Sande v. City of Grand Forks*, 269 N.W.2d 93 (N.D.1978).

The Court may consider the pleadings, depositions, admissions, affidavits, and interrogatories, and inferences to be drawn therefrom to determine whether or not summary judgment is appropriate. *Albers v. Nodak Racing Club, Inc.*, 256 N.W.2d 355 (N.D.1977).

A nonmoving party may be granted summary judgment if it is so entitled. Rule 56(c), NDRCivP; 6 Moore, Federal Practice (2d Ed.) ¶ 56.12 "Summary Judgment for Non-Moving Party."

The uncontroverted affidavits and pleadings of Power Concrete establish that each delivery of concrete was a separate and individual contract. We specifically note that the affidavits submitted by the Spiers did not challenge the assertions in Power Concrete's answer that each delivery of concrete was a separate and individual contract. Nor did the Spiers file a counter-affidavit to dispute the same contention in the affidavit submitted by Power Concrete. Rather, the Spiers relied upon their pleadings and affidavits and assert that the date of their contract with Dakota Building, 17 April 1979, determined the procedures required for Power Concrete to be entitled to a mechanic's lien. Furthermore, the Spiers' brief to this Court asserts that the law in effect at the time of their contract with Dakota Building on 17 April 1979 determines the rights of the parties.

The contention that there was one continuous contract between M & M and Power Concrete was raised in the appellate brief and in the oral argument by the Spiers, but so far as the record shows, it was not raised by the Spiers' pleadings or affidavits. We have said many times that a party may not raise an issue for the first time on appeal. *Scientific Application, Inc. v. Delkamp*, 303 N.W.2d 71, North Dakota Civil 9833 (1981); *Dobervich v. Central Cass Public School District No. 17*, 283 N.W.2d 187 (N.D.1979); *Waletzko v. Herdegen*, 226 N.W.2d 648 (N.D.1975); *State v. Haakenson*, 213 N.W.2d 394 (N.D.1973). Accordingly, the Spiers are precluded from raising this question on appeal.

To avoid the conclusion that M & M and Power Concrete had separate and individual contracts for each delivery of concrete, the Spiers should have come forward with a counter-affidavit. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). We are not suggesting that if counter-affidavits had been filed the answer would be different. Had such affidavits been filed, the matter might not have been appropriate for summary judgment. In the absence of such counter-affidavits we must treat the uncontroverted averments concerning the separate and individual contracts in Power Concrete's affidavits as true. *Jones v. Halekulani Hotel*, 557 F.2d 1308 (9th Cir. 1977); *Robert Stigwood Group Ltd. v. O'Reilly*, 530 F.2d 1096 (2d Cir. 1976), *cert. denied* 429 U.S. 848, 97 S.Ct. 135, 50 L.Ed.2d 121 (1976); *Echaide v. Confederation of Canada Life Insurance Co.*, 459 F.2d 1377 (5th Cir. 1972); *Missouri Pacific Railroad Co. v. National Milling Co.*, 409 F.2d 882 (3d Cir. 1969). Therefore, the only genuine dispute in this case concerns the legal consequences to be applied to the uncontroverted facts as alleged in the pleadings and presented in the affidavits.

A mechanic's lien is purely a creature of statute, and the statutory requirements must be fairly met. *Schaffer v. Smith*, 113 N.W.2d 688 (N.D.1962). Rights under a mechanic's lien are governed by the law in force at the time the right accrued. *Mahon v. Surerus*, 9 N.D. 57, 81 N.W. 64 (1899); see also, 53 Am.Jur.2d, *Mechanic's Lien* § 27, page 544.

Section 35–27–03, NDCC,[4] deals with when a mechanic's lien attaches and provides as follows:

"As against the owner of the land, subject to section 35–27–02, such liens shall attach and take effect from the time the first item of material or labor is furnished upon the premises for the beginning of the improvement. As against a bona fide purchaser, mortgagee, or encumbrancer without notice, no lien shall attach prior to the actual and visible beginning of the improvement on the ground. Subject to the exception set forth in section 35–27–04, all such liens shall be preferred to any mortgage or other encumbrance not then of record, unless the lienholder had actual notice thereof."

Based on the uncontroverted facts as set forth in the affidavit submitted by Power Concrete that each delivery was a separate contract, a lien on each delivery attached at the time of the delivery of the concrete to the premises and not at the time of the Spiers' contract with Dakota Building. Because Power Concrete did not comply with the statutory notice requirements for deliveries made prior to 1 July 1979, the lien for these contributions is invalid. However, because the notice requirements to the owner were deleted from the amended statute, Power Concrete's mechanic's lien is valid for contributions after 1 July 1979.

The Spiers also assert that language of § 35–27–05, NDCC,[5] defeats Power Con-

4. Section 35–27–03, NDCC, was not amended in 1979.

5. Section 35–27–05, NDCC, provides as follows:

Any person having a contract for the improvement of land in accordance with section 35–27–02 *may file* for record, with the clerk of the court of the county within which the land is situated, a notice of intention to claim a mechanic's lien, *which notice shall be notice to all*

crete mechanic's lien. Spier points out that the mechanic's lien notice was dated 17 April 1980, and that no materials were furnished after that date by Power Concrete. Based on this, Spier asserts that the lien must fail because it was not made on goods thereafter furnished. We disagree.

 Initially, we note that § 35–27–05, NDCC, contains permissive and not mandatory language and compliance with this section is not necessary to establish a valid lien between the materialman and the owner of the property improved. Failure to comply with § 35–27–05, NDCC, does not defeat the rights of a materialman as against the owner, but rather provides a means to give notice of the potential lien to all third parties, before the lien attaches so as to establish a priority over these third parties even though there has been no actual or visible beginning of improvements on the land. This section has no application to the instant situation.

For reasons stated in the opinion, the decision of the district court is affirmed.

ERICKSTAD, C. J., and PAULSON, VANDE WALLE and PEDERSON, JJ., concur.

*of his intention to perfect a lien for the contract price or value of all contributions to such improvement thereafter made by him* or at his instance. Such notice of intention to claim a mechanic's lien shall contain all of the following:
 1. The name of the person in possession of the land.
 2. The description of the property to be charged with the lien.
 3. The date of the contract.
 4. That a mechanic's lien against the building, improvement, or premises will be perfected according to law unless the account shall have been paid.
The clerk of court shall file and record the notice of intention to claim a mechanic's lien as is provided in section 35–27–12. [Emphasis added.]